**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**JONESBORO DIVISION**

**PAMELA NEWSOM**                                                                                                  **PLAINTIFF**

**v.                            CASE NO. 3:04-CV-124 GTE**

**SBC COMMUNICATIONS, INC., CORE, INC.,**
**SMAART QUALITY REVIEW, AND**
**SBC DISABILITY INCOME PLAN**                                                                  **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

Presently before the Court are Cross-Motions for Summary Judgment. The Defendants' Motion will be granted and the Plaintiff's Motion will be denied.

**I. Background**

Plaintiff Pamela Newsom was employed by Defendant SBC Communications, Inc. as a service representative from July 5, 1979 to May 15, 2001. On May 7, 2001, Plaintiff saw Dr. Owen H. Clopton, Jr. for a medical evaluation and examination.

In May 2001, Plaintiff submitted a request for disability benefits to the Defendant CORE, Inc. through her treating physician, Dr. Clopton. (AR460). As the claims administrator, CORE, Inc. wrote to Plaintiff on July 9, 2001 advising that her claim for benefits due to anxiety and depression was denied. (AR448). CORE determined that Plaintiff was not disabled from working stating that: (1) Dr. Clopton reported [Plaintiff's] level of functioning as normal; (2) Dr. Clopton was unable to provide symptoms that would keep [Plaintiff] from working for the length of time requested; (3) Dr. Clopton stated that [Plaintiff was] not in treatment by a therapist, counselor, or a psychiatrist at the

time which would be indicated for a diagnosis of Anxiety and Depression. (AR448).

CORE was then notified that Plaintiff was under the care of a psychiatrist, Dr. Sara VanScoy. After CORE's physician advisor contacted Dr. VanScoy on November 30, 2001, the physician advisor approved Plaintiff's claim for disability for the period of May 23, 2001 through April 2, 2002. (AR428). On May 20, 2002, the SBC Medical Absence and Accommodation Resource Team (SMAART) advised Plaintiff via letter that short-term disability benefits would be denied effective April 6, 2002. (AR390). SMAART wrote "[t]here does not appear to be enough observational data to show severity of impairment and significant limitation of functioning." (AR391). For this reason, SMAART determined that the clinical evidence did not support a finding that Plaintiff was unable to perform the essential functions of her job or of another available job.

By letter dated May 22, 2002, SMAART denied Plaintiff's application for long-term disability benefits for failure to satisfy the 52-week waiting period as required under the Plan in order to qualify for long-term disability. (AR497). Plaintiff appealed the decisions to deny short-term and long-term disability benefits on May 31, 2002  (AR496), supplying letters from Dr. Clopton (AR349), Dr. Russell Dixon (AR350), and Dr. VanScoy (AR351).

SMAART referred Plaintiff's file to Dr. Jack Greener for an independent review. After examining Plaintiff's file and the physician letters, Dr. Greener concluded that there was no documentation that demonstrated Plaintiff was disabled from working. (AR363-68). Dr. Greener determined that: (1) Dr. Clopton stated that he never evaluated nor treated Plaintiff for a psychiatric disability, which appeared to contradict the representations in his physician letter; (2) Dr. VanScoy's statements appear unsupported by Plaintiff's medical file and fail to outline any treatment plan; and (3) Dr. Dixon provided no therapy or progress notes so his method of assessing of Plaintiff's

functional capacity is unknown. (AR367).

After Dr. Greener's review, the SMAART Quality Review Unit reviewed Plaintiff's file and on August 28, 2002 denied her appeal, citing Article 2, Paragraphs 2.15, 2.23, and 2.26 of the Disability Income Plan. (AR358). The cited paragraphs are as follows:

> 2.15 **"Partial Disability"** or **"Partially Disabled"** means, with regard to Short Term Disability, that because of Illness or Injury, an Employee is unable to perform all of the essential functions of his job or another available job assigned by the Participating Company, within the same full- or part-time classification for which the Employee is qualified, for the same number of hours the Employee was regularly scheduled to work before the start of Short Term Disability.
>
> 2.23 **"Short Term Disability"** shall mean the period lasting fifty-two (52) weeks or less for which Benefits under the Plan are payable for a Total or Partial Disability.
>
> 2.26 **"Total Disability"** or **"Totally Disabled"** means, with regard to Short Term Disability, that because of Illness or Injury, an Employee is unable to perform all of the essential functions of his job or another available job assigned by the Participating Company with the same full- or part-time classification for which the Employee is qualified. **"Total Disability" or "Totally Disabled"** means, with regard to Long Term Disability, that because of Illness or Injury, an Employee is prevented from engaging in any employment for which the Employee is qualified or may reasonably become qualified based on education, training, or experience. An Employee is considered Totally Disabled if he is incapable of performing the requirements of a job other than one for which the rate of pay is less than 50% of his Basic Wage Rate at the time his Long Term Disability started. However, the Employee is allowed to work and still receive Long Term Disability Benefits if the job pays less than 50% of his Basic Wage Rate before his Disability started. The Benefits payable, when added to the pay the Employee receives for working, cannot exceed 75% of his Basic Wage Rate at the time his Long Term Disability started.

(AR008-9) (emphasis in original). The letter goes on to explain the reasoning for upholding the denial of short-term and long-term disability benefits:

> No formal mental status examinations were presented from either of her

> providers. There is no information regarding the frequency of visits to Dr. Dixon or the level of care that he provided. There is no evidence of any cognitive dysfunction or psychosis. There are no clinical findings that are clearly indicative of total disability during the period under review.
>
> It appears that Ms. Newsom has symptoms that may benefit from ongoing treatment. However treatment alone will not result in a finding of disability. No medical evidence has been submitted that supports a condition that is so severe that prevented [Ms. Newsom] from performing the job duties of Service Representative or any other available job assigned by the Company from April 6, 2002 through May 21, 2002 the end of the 52-week Short Term Disability (STD) period. Since she did not exhaust her STD benefits, she is not eligible for Long Term Disability.

(AR359-60).

On September 5, 2002, Plaintiff requested a reconsideration of this determination. Defendants denied this request by letter dated September 9, 2002.

**II. Summary Judgment Standard**

Summary judgment is appropriate only when, in reviewing the evidence in the light most favorable to the non-moving party, there is no genuine issue as to any material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial-- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The Eighth Circuit set out the burdens of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the party moving for summary judgment is only to demonstrate, i.e., '[to] point[] out to the District Court,' that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339 (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)(brackets in original)).

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id*.

Once the moving party demonstrates that the record does not disclose a genuine dispute on a material fact, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. Rule 56(e). The plain language of Rule 56(c) mandates the entry of summary judgment against a non-moving party which, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to its case, and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322.

**III. Discussion**

District courts review an ERISA plan administrator's decision to terminate benefits *de novo*, unless the benefits plan vests the administrator with the discretionary authority to determine benefits eligibility or to interpret the terms of the plan. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 957-58 (1989). Where the plan administrator has such discretionary powers, courts review a denial-of-benefits claim with a deferential eye, overturning the administrator's decision only if it was "arbitrary and capricious". *See*, *e.g.*, *Lickteig v. Business Men's Assur. Co. of America*, 61 F.3d 579, 583 (8th Cir. 1995).

It appears from the Plan that the administrator is vested with discretionary authority to determine eligibility of benefits and to interpret the terms of the disability plan:

> The Committee and each Claims Administrator and each subcommittee to whom claim determination or review authority has been delegated shall have full and exclusive authority and discretion to grant and deny claims under the Plan, including the power to interpret the Plan and determine the eligibility of any individual to participate in and receive benefits under the Plan. The decision of the Committee or a Claims Administrator or any subcommittee as applicable, on any claim, in accordance with the claim procedures set forth in this Subsection 5.5, shall be final and conclusive and shall not be subject to further review.

(AR019). Accordingly, the Court will apply the "arbitrary and capricious" standard to the issues at bar. Plaintiff argues that the a less deferential standard of review applies here "based upon numerous procedural irregularities during the administrative review". (Plaintiff's Motion for Partial Summary Judgment, p.2, Dkt. #9). Courts may apply a less deferential standard of review when "the plaintiff presents 'material, probative evidence demonstrating that (1) a palpable conflict of interest or a serious procedural irregularity existed, which (2) caused a serious breach of the plan administrator's fiduciary duty to the plaintiff." *Shelton v. ContiGroup Companies, Inc.*, 285 F.3d 640, 642 (8th Cir.

2002) (*quoting Woo v. Deluxe Corp.*, 144 F.3d 1157, 1160 (8th Cir.1998)).

The Court finds Plaintiff's arguments unconvincing. As the Eighth Circuit Court opined, "The existence of a palpable conflict of interest and serious procedural irregularities does not necessarily mean that we will apply a less deferential standard of review. [Plaintiff] must also satisfy the second part of the *Woo* test which requires him to show how the conflict of interest or serious procedural irregularity caused a serious breach of [the administrator's] fiduciary duty." *Torres v. UNUM Life Ins. Co. of America*, 405 F.3d 670, 679 (8th Cir. 2005). Here, Plaintiff fails to satisfy the first prong of the *Woo* test. The failure to include certain documents in the administrative record is insufficient evidence to prove that there were procedural irregularities that impacted the decision to deny benefits such that the administrator breached its fiduciary duty to the claimaint. Moreover, the Defendants supplemented the administrative record with documents that appear to address the deficiencies alleged by Plaintiff. (*See* AR515-714). Accordingly, the Court declines to apply a standard less deferential than the "arbitrary and capricious" standard of review.

The "arbitrary and capricious" standard examines "whether the decision to deny [] benefits was supported by substantial evidence, meaning more than a scintilla but less than a preponderance." *Schatz v. Mutual of Omaha Ins. Co.*, 220 F.3d 944, 949 (8th Cir. 2000). The Eighth Circuit Court emphasized that "[p]rovided the decision 'is supported by a reasonable explanation, it should not be disturbed, even though a different reasonable interpretation could have been made.'" *Id.* (*quoting Cash v. Wal-Mart Group Health Plan*, 107 F.3d 637, 641 (8th Cir. 1997)).

Plaintiff was denied benefits because Defendants found insufficient objective evidence to support her claim of total disability. Based upon the opinions expressed in the three physician letters, Defendants acknowledged that Plaintiff suffered from certain symptoms, but that alone was

insufficient to support continued short-term disability benefits. Defendants' conclusion finds support even in the letters submitted by Plaintiff's physicians.

Dr VanScoy describes Plaintiff's condition as follows:

> She continues to struggle with severe symptoms of depression and anxiety. Her current treatment regiment consists of a combination of medication management and psychotherapy. She is barely able to stay out of the hospital, exhibiting chronic feelings of worthlessness, hopelessness, sleeplessness, chronic lack of energy, and inability to trust anyone or anything. On many days, she lacks the energy or motivation to get out of bed, and while she does force herself to continue with necessary activities, she almost never leaves her house secondary to extreme fear. She continues to fight feelings that she would be better off dead.
>
> Her current working diagnoses include Post traumatic stress disorder (DSM IV 309.81), Panic disorder with agoraphobia (DSM IV 300.21), and Major Depressive disorder, single episode, severe, without psychotic features (DSM IV 296.33). All of these conditions are imminently treatable in the proper setting; however, given the severity of her post traumatic symptoms and their relationship to her employment, it is unlikely that she will ever be able to return to that job setting.

(AR380). This letter outlines a litany of symptoms, but does not describe Plaintiff's prognosis, the impact of the treatment on her symptoms, or the impact on her functional capacity. Moreover, Dr. VanScoy qualifies Plaintiff's work limitations to "that job setting." These statements do not support the conclusion that Plaintiff is totally disabled, and clearly do not preclude a finding that Plaintiff could function, provided regular treatment, in a different work environment from that which caused her alleged anxiety and depression.

The letters submitted by Dr. Clopton and Dr. Dixon contain clear statements that Plaintiff is completely unable to work. However, these letters provide only conclusory statements without details regarding symptoms or treatment. For example, Dr. Webster states, "At present, [Ms.

Newsom] is completely unable to work at any job because of her emotional condition. It is unlikely she will be able to work in less than three more years because this condition developed so insiduously over the course of her long career." (AR378).

The symptoms suffered by Plaintiff are subjective so are difficult to evaluate. However, it is not arbitrary and capricious to require the claimant to provide objective evidence of her inability to function in any working capacity. *See*, *e.g., Nichols v. Verizon Communications, Inc.,* 78 Fed.Appx. 209, 212 (3d Cir. 2003) (" The record reveals that the denial of [plaintiff's] claim was based on any number of factors, including the lack of objective tests demonstrating the existence of her symptoms, something a claimant with [chronic fatigue syndrom] might reasonably be asked to provide."). The flaw here is that there was insufficient evidence of the claimed symptoms and the limitations those symptoms imposed on Plaintiff's ability to work. As Plaintiff may be reasonably asked to provide objective evidence of her symptoms, the failure to do so leaves the Court with no grounds to overturn the administrator's determination. Accordingly, the Court finds the denial of benefits was not "arbitrary and capricious" as it is supported by more than a scintilla of evidence.

IT IS THEREFORE ORDERED THAT the Plaintiff's Motion for Partial Summary Judgment (Dkt. #9, 16) shall be, and it is hereby, DENIED.

IT IS FURTHER ORDERED THAT the Defendants' Motion for Partial Summary Judgment (Dkt. #6, 13) shall be, and it is hereby, GRANTED.

Dated this 30th day of September, 2005.

_/s/Garnett Thomas Eisele_____
UNITED STATES DISTRICT JUDGE